### UNITED STATES v. FULLER.

#### No. 14136.

District Court, E. D. Pennsylvania.

July 15, 1930.

Calvin S. Boyer, U. S. Atty., of Philadelphia, Pa.

George W. Aubrey, of Allentown, Pa., and George Wharton Pepper, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.

This suit was brought by the United States to recover income taxes from the defendant upon his taxable income from all sources for the calendar year ended December 31, 1918.

Pursuant to the provisions of the "Act to provide revenue, and for other purposes," of February 24, 1919 (40 Stat. 1057), the defendant in March, 1919, filed his individual income tax return for the year 1918. The return showed $110,026.35 as his total net income, and $2,795.45 as his total tax liability. That sum was assessed by the Commissioner of Internal Revenue and paid.

On March 15, 1920, the defendant filed an amended income tax return for the year 1918 showing a total net income of $104,131.19 and corrected tax liability of $25,619.03, the unpaid portion of which was duly paid. Upon a review and audit of the income tax returns of the defendant for the year 1918, an additional tax of $137,818.57 was determined by the commissioner to be due, and on February 6, 1925, in accordance with the provisions of section 274 of the Revenue Act of 1924 (26 USCA § 1048 note et seq.), notice of a deficiency assessment for taxes in that amount was sent to the defendant.

The basis upon which this deficiency assessment was made, of which the defendant had notice in what is known as the "sixty day letter," is set out in full in Exhibit A of the affidavit of defense. Eliminating some details, the pertinent facts are as follows:

The defendant, James W. Fuller, Jr., was, during and prior to the year 1918, the owner of stock of the Lehigh Car Wheel & Axle Works, a corporation organized under the laws of Pennsylvania, hereinafter desig-

nated "the corporation," having outstanding capital stock of a par value of $100 per share, owned as follows:

| | |
|---|---|
| James W. Fuller, Jr., the taxpayer | 537½ |
| Mary L. McCaskey, his sister | 487½ |
| Blanche T. Salade, his sister | 487½ |
| Maude M. Elverson, his sister | 487½ |
| Warren A. Wilbur | 1,000 |
| Total | 3,000 shares. |

Being informed that the other stockholders, or some of them, contemplated selling their stock to outsiders, Mr. Fuller entered into agreements with them to purchase their stock at $250 a share; the total purchase price for 2,462½ shares to be $615,625.

A plan for financing the proposed purchase was arranged by Mr. Fuller and the other stockholders with two banking houses of Philadelphia. The Subcommittee on Capital Issues of the Philadelphia Federal Reserve District authorized the corporation to issue bonds against its surplus and undivided profits in the amount of $600,000 under condition that, when sold, the purchasers would invest the purchase money in Liberty bonds and agree not to sell them for two years. The stock of Mary L. McCaskey, Blanche T. Salade, Maude M. Elverson, and Warren A. Wilbur having been transferred to Mr. Fuller's name and held for the protection of the banks, a dividend in the amount of the bonds was declared and the bonds issued to Mr. Fuller. The bonds were sold to the bankers at 78 per cent. of their face value, or $468,000, that being their fair market value at that time and $132,000 less than their par value, and the money was used in the purchase of Liberty bonds in payment for the stock in accordance with the condition imposed by the Subcommittee on Capital Issues.

The accumulation of surplus and undivided profits of the corporation was in excess of $1,100,000, and that part thereof which had accumulated since February 28, 1913, amounted to $320,330.48, and the fair market value at 78 per cent. of par, apportioned to the surplus and profits accumulated since February 28, 1913, was $249,857.77. The commissioner found that that sum accruing to the stockholder was the amount of his income, upon which additional taxes were due for the year 1918 in the amount of $137,818.57. From the notice of deficiency in income tax, Mr. Fuller took an appeal to the Board of Tax Appeals. The board in its decision held that that portion of the bond issue representing the $320,330.48 of surplus and undivided profits of the corporation, accumulated since February 28, 1918, should be added at par value to the taxpayer's gross income as dividend subject to surtax, and that a loss for the year in the amount of $132,000 sustained in the sale of the total bond issue at 78 per cent. should be treated as a deduction from the taxpayer's gross income and his income tax liability for the year recomputed after such changes should be made.

It therefore disallowed $41,450.45 of the amount of $137,818.57 found to be due by the commissioner in his "sixty day letter."

The decision (7 B. T. A. 28) was promulgated May 20, 1927, and the defendant paid to the government the amount found to be due by the Board of Tax Appeals, namely, $96,073.95.

The questions involved in the case are to be determined by the proper method of (1) treatment of the bond issue as income and (2) treatment of the difference between the par value of the bond issue and its market value.

The liability for tax upon the bond dividend is based upon section 201 of the Revenue Act of 1918 (40 Stat. 1059):

"Sec. 201. (a) That the term 'dividend' when used in this title (except in paragraph (10) of subdivision (a) of section 234) means (1) any distribution made by a corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, or (2) any such distribution made by a personal service corporation out of its earnings or profits accumulated since February 28, 1913, and prior to January 1, 1918.

"(b) Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed. Any distribution made in the year 1918 or any year thereafter shall be deemed to have been made from earnings or profits accumulated since February 28, 1913, or, in the case of a personal service corporation, from the most recently accumulated earnings or profits; but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from the tax, after the earn-

ings and profits accumulated since February 28, 1913, have been distributed."

■ I think the Board of Tax Appeals erred in the basis upon which it placed the $320,000 of bonds which were taxable under section 201 of the Revenue Act of 1918. The entire amount of the bond issue was not taxable, but only the proportion thereof which represented distribution by the corporation out of its earnings or profits accumulated since February 28, 1913. If the distribution had been made in cash, the contention of the government and the ruling of the Board of Tax Appeals upon the amount of the dividend accruing to the taxpayer would have been sound. The corporation depleted its entire surplus accumulated since February 28, 1913, but that did not go to the shareholder, who was the taxpayer. What the taxpayer received consisted of obligations upon the part of the corporation which were distributed to the taxpayer as a dividend. To the extent of $320,330.48, these bonds were taxable but only as against the taxpayer as an addition to his wealth represented by the proportion of the bonds which were issued against the corporation's surplus and undivided profits accumulated since February 28, 1913. His wealth was not added to in the amount of the face or par value of the bonds, but only to the extent of their fair market value. That is to say, 78 per cent. of their face value.

The tax was not laid upon the corporation nor upon what it had obligated itself to pay. Section 201 makes taxable as a dividend a distribution whether in cash or other property out of its earnings. The distribution was not made in cash but in bonds, payable at future dates out of cash remaining as surplus or undivided profits in its treasury. The taxpayer did not receive the $320,330.48, but received bonds obligating the company to pay that sum out of its surplus and undivided profits. In his hands, the bonds were not worth par. They were only worth the fair market value which he obtained for them.

If these bonds were valued and taxable at par, then the difference between the $320,000 in round figures, representing the taxable part of the dividend, and the $468,000, for which the entire issue was sold, would represent $280,000 in face value of bonds which he sold at 78 per cent. but for which he received only the difference between $320,000 and $468,000, or $148,000. In other words, the government's contention would result in an absurdity, in view of the fact that all of the bonds were sold at the same price, at 78 per cent.

If the transaction is to be treated as the Board of Tax Appeals treated it, as a loss to the taxpayer of $132,000 because the bonds were sold at 78 per cent. of par, we are again confronted by the error in fact of considering that Mr. Fuller received $600,-000. He did not receive that. He only received property in bonds worth $468,000. That was the fair market value when he received them and that was the price he received for them. I am unable to agree with the Board of Tax Appeals, therefore, that there was any loss upon the sale of the bonds.

Under the foregoing conclusions, the United States can recover in this suit only the difference between the tax claimed in the "sixty day letter" and that paid by Mr. Fuller in pursuance of the decision of the Board of Tax Appeals.

■ I am not convinced that, under the rule announced in article 1003 of Treasury Regulation 45 (promulgated under the 1918 Revenue Act, 40 Stat. 1083, § 250(b), the United States is entitled to 12 per cent. interest. While the taxpayer made errors in his original returns, there is no evidence that there was any intent on his part to defraud the United States, nor any evidence of negligence in a case where the taxpayer, through misunderstanding of the law, failed to make a proper return.

The deficiency due under the above findings of fact and law, as herein adopted, may be computed and judgment entered in favor of the United States for such amount as is found to be due with interest at 6 per cent. from the period or periods when the taxes or partial payments thereon were due.